JAZWINSKI and others, Respondents, vs. CITY OF MILWAUKEE and others, Appellants.

*May 24—July 1, 1948.*

For the appellants there were briefs by *Walter J. Mattison,* city attorney, and *Clyde E. Sheets,* assistant city attorney, and oral argument by *Mr. Sheets* and *Mr. J. A. Hedding* of Milwaukee.

*George A. Bowman* of Milwaukee, for the respondents.

PER CURIAM.* The first question for decision is whether the city service commission of Milwaukee had authority to consolidate the positions of heavy-truck drivers and light-truck drivers and establish seniority on the consolidated basis.

In 1923, the common council of the city of Milwaukee by ordinance created the following positions: Truck driver, three and one-half ton truck or larger; truck driver, truck less than three and one-half tons; fixing the salary per hour to be paid for each position. The city service commission of the city of Milwaukee, which will hereafter be referred to as "commission," classified these two positions under skilled-labor service, held separate examinations, and established separate seniority lists for each position. The city continued to employ truck drivers under these classifications until 1936, when the heavy-truck drivers started *mandamus* proceedings to compel the commission to grant them seniority rights in both positions. At that time the commission held a further examination and on June 15, 1937, while the *mandamus* action was pending, the commission determined it would not permit seniority rights under both classifications. In February, 1943, the commission changed its position, consolidating the two classifications for seniority rights, declaring the purpose to be the improvement of the morale of the majority of truck drivers. Respondents opposed this proposal, calling attention to the fact it would give light-truck drivers seniority rights over persons

---

* The opinion in this case was prepared by the late Mr. Justice BARLOW.

who took an examination in 1936 as heavy-truck drivers, although light-truck drivers never took the heavy-truck drivers' examination.

April 23, 1945, respondents made due petition to the commission to return to them their seniority rights as heavy-truck drivers, and on May 18, 1945, this request was denied. Action was commenced within a month thereafter.

The creation, powers, and duties of the commission are found in secs. 16.45 to 16.75, Stats. It is required to classify all offices and positions in the city service; to make rules to carry out the purposes of the act; to provide for examination and selection of persons to fill positions, and for selection of persons to be employed; to remove employees for cause, and provide for the filling of vacancies; to prepare and keep a register for each grade or class of position in the service of the city and persons eligible as candidates in the order of their relative excellence as determined by the examination; together with other duties and services so that employees of the city receive fair treatment under standards adopted by the board, and furnish protection to employees who are rendering efficient service.

Under sec. 16.51, Stats., the commission has authority to make rules, and prior to the consolidation of the positions in question it adopted sec. 3, rule XII, which provides "that the commission may in its discretion establish relative seniority rights among aggregations of persons holding positions differing in title but similar in responsibility and general nature of duties." It is argued by appellants that under this rule the question for determination is whether in consolidating the positions in question there was an abuse of discretion on the part of the commission. It is argued that an employee has no vested right in any particular method of calculating seniority, which is an administrative matter, citing *State ex rel. Salvesen v. Milwaukee* (1946), 249 Wis. 351, 24 N. W. (2d) 630.

In considering these questions we must give recognition to the fact that the city council of the city is charged with responsibility for the administration of the city government and the nature of the activities in which the city will engage according to law. Certainly it cannot be said the commission had the right to determine certain work was to be done by trucks in place of some other method, or that the work should be done at all. This was a matter of policy for the city council. By virtue of this authority in the council it passed city ordinance, File No. 25850, providing for the employment of heavy-truck drivers and light-truck drivers, and fixing the rate of pay for each position. To permit the commission to create other classifications of these positions would be to permit it to usurp the rights of the council. Likewise there would be no compensation schedule if the commission created additional classifications. To permit it to consolidate classifications which the city council has made is a like usurpation of the duties of the council. The fact that the commission is authorized by statute to make rules does not authorize it to divest the city council of its legal rights as governing body of the city. We must recognize the fact that the members of the council are elected by the electors of the city, charged with the responsibility of carrying on city government, while the commission is an appointive body to perform administrative services within the limits provided by statute. To permit the commission to provide for unlimited classification of employees and positions and the employment of persons under these classifications without any control of the council and require the city to provide the funds therefor could well create an unbalanced budget over which the council would have no control. Rules adopted by the commission are not submitted to the council for approval or disapproval, but are merely submitted to the mayor for this purpose. The council under its proper authority determined to employ two classes of truck drivers, and we conclude the commission

had no authority to consolidate these classifications for any purpose whatsoever.

Appellants further argue that the lapse of two years, two and one-half months from date of action of the commission establishing the new consolidated seniority list to the date of the commencement of legal action prejudiced the city and constitutes laches. *Mandamus* is a legal remedy, but at the same time is a remedial process which is awarded not as a matter of right but in the exercise of sound judicial discretion and upon equitable principles, and is therefore subject to the equitable doctrine of laches. 35 Am. Jur., Mandamus, p. 65, sec. 312; *United States ex rel. Arant v. Lane,* 249 U. S. 367, 39 Sup. Ct. 293, 63 L. Ed. 650, and cases there cited. No claim is made by appellants that the statute of limitations has run against any rights of respondents, but it is argued that if respondents are reinstated the city will be required to pay any loss which the truck drivers sustained by reason of the act of the commission. , The truck drivers protested to the commission at the time it was considering the consolidation. The commission had previously refused this same reclassification. The truck drivers were employees of the city, and their employment or discharge was under the jurisdiction of the commission. Nearly two years elapsed between the time the action was commenced and judgment was finally entered. The record fails to disclose any strenuous effort on the part of the city to bring the action on for trial at an early date, which it certainly would have done if it would suffer material and serious loss by reason of delay. In 1936 the commissioners refused this classification, and seven years later reclassified over the protests of respondents. It was only natural for respondents to allow reasonable time for the commission to give it further consideration before commencing an action, in view of the fact it had acted both ways on the question. After a lapse of approximately two years respondents petitioned the commission to return them to their original classification, and when it refused to do so commenced this action within a month. Under all

the circumstances it is considered it was not an abuse of sound judicial discretion for the trial court to grant the writ.

Judgment affirmed.

MARTIN, J., took no part.